

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

In the Interest of A.J.C., Juvenile:
L.E.R. and L.C.R., )
                      )
             Respondents, )    **WD86706**
v. )
                      )    **OPINION FILED:**
                      )    **August 27, 2024**
A.J.C., )
                      )
             Appellant. )

### Appeal from the Circuit Court of Vernon County, Missouri
### The Honorable David R. Munton, Judge

### Before Division Two:  Thomas N. Chapman, Presiding Judge,
### Karen King Mitchell and W. Douglas Thomson, Judges

A.J.C. (Mother) appeals from an order entered by the Vernon County Circuit Court, Juvenile Division, terminating her parental rights to A.J.C. (Child).[1] Mother raises one point on appeal. She claims the trial court erred in denying her motion to dismiss the

---

[1] "The right to appeal is purely statutory . . . ." *Laramore v. Jacobsen*, 652 S.W.3d 385, 388 (Mo. App. E.D. 2022) (quoting *Wilson v. City of St. Louis*, 600 S.W.2d 763, 767 (Mo. banc 2020)). Mother appeals from an order entered by the Juvenile Division. Section 211.261.1 allows a parent adversely affected by "any final judgment, *order* or decree made under the provisions of . . . chapter [211—Juvenile Division]" to appeal that decision. (Emphasis added.) Thus, Mother's appeal is authorized by statute. All statutory references are to the Revised Statutes of Missouri (Supp. 2022).

termination proceedings because they were initiated by the Child's attorneys-in-fact (Attorneys-in-Fact), and § 475.602 prohibits attorneys-in-fact from consenting to termination of parental rights. Finding no error, we affirm.

## Background[2]

Child was born on January 10, 2020, to Mother and M.A.C. (Father), who were married at the time. Thereafter, Mother and Father separated and, in the fall of 2022, Child's paternal grandparents (Grandparents) applied for and were granted guardianship of Child, with the consent of Mother and Father.[3] In December 2022, before leaving on an overseas mission trip, Grandparents executed a power of attorney transferring physical custody of Child to Attorneys-in-Fact for eventual adoption by them. Attorneys-in-Fact, a married couple, have raised Child since December 2022.

On March 9, 2023, Attorneys-in-Fact filed a petition seeking to terminate Mother's parental rights and adopt Child. Attorneys-in-Fact then filed an amended petition, which Mother answered. Shortly thereafter, Mother filed a motion to dismiss the amended petition for failure to state a claim. In her motion, Mother argued that, under § 475.602, Attorneys-in-Fact are prohibited from consenting to termination of Mother's parental rights and, thus, their amended petition should be dismissed.

The trial court held a hearing on July 24, 2023. Child's co-guardian and paternal grandmother (Grandmother) testified that she and co-guardian and paternal grandfather

---

[2] Mother does not contest the trial court's findings of fact issued on September 12, 2023. Unless otherwise noted, facts in this section are taken from that document without further attribution.

[3] Mother and Father eventually divorced in February 2023.

2

had physical custody and care of Child one-third of the time from Child's birth until Grandparents were appointed as Child's guardians. During that time, Mother's visits with Child were perfunctory. Grandmother also testified that Mother was incapable of providing nutritious food and beverages for Child or meeting her needs in terms of healthcare and proper hygiene. Mother's uncle testified about her unsanitary living conditions.

Mother testified that she lives with her fiancé (Fiancé) in a former motel room that is too small to accommodate Child. Mother lacks steady employment, and the couple lives primarily on Fiancé's disability income. Mother suffers from untreated physical and mental health issues. Mother also testified that she is not opposed to Child being adopted but would prefer a different placement for Child.[4]

Following the hearing, the court issued an order terminating the parental rights of Mother and Father and transferring legal custody of Child to Attorneys-in-Fact for the purpose of subsequent adoption by them. The court concluded, "Mother has abandoned . . . [C]hild, in that, for a period of six months immediately prior to the filing of the Petition herein, [Mother] has willfully, substantially, and continuously neglected to provide [C]hild with necessary care and protection, or to provide [C]hild with adequate food, clothing, shelter and education." Mother appeals the trial court's denial of her motion to dismiss.[5]

---

[4] Father consented to termination of his parental rights and did not testify at the hearing.

[5] "Generally, a party cannot appeal the denial of a motion to dismiss because it is not considered a final judgment." *Forbes v. Allison*, 646 S.W.3d 733, 737 (Mo. App.

## Standard of Review

"We will affirm the trial court's judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Forbes v. Allison*, 646 S.W.3d 733, 737 (Mo. App. S.D. 2022). "Whether the trial court was required to dismiss [the amended] petition based on [§ 475.602] is a question of law." *Id*. at 737-38. We review questions of law *de novo*. *Id*. at 738.

## Analysis

In her sole point on appeal, Mother argues that the court erred in denying her motion to dismiss the amended petition because § 475.602 prohibits Attorneys-in-Fact from consenting to termination of Mother's parental rights. In pertinent part, § 475.602.1 states,

> A parent or legal custodian of a child may, by a properly executed power of attorney as provided under section 475.604, delegate to an attorney-in-fact for a period not to exceed one year . . . any of the powers regarding the care and custody of the child, except the power to consent to . . . adoption of the child . . . or the termination of parental rights to the child. A delegation of powers under this section shall not be construed to change or modify any parental or legal rights, obligations, or authority established by an existing court order or deprive the parent or legal custodian of any parental or legal rights, obligations, or authority regarding the custody, visitation, or support of the child.

S.D. 2022). "However, after a final judgment has been entered, an order denying a motion to dismiss can be reviewed as part of the appeal from that final judgment." *Id.* Here, denial of Mother's motion to dismiss was part of the order terminating her rights to Child. Thus, we review the trial court's order denying Mother's motion to dismiss as an appeal from the final order.

Mother contends that, because care and custody of Child was delegated to Attorneys-in-Fact via a power of attorney, they could not consent to termination of Mother's rights. Mother interprets the filing of the amended petition as "consenting" to termination within the meaning of § 475.602.1. Mother's argument rests on the meaning of the term "consent" as used in that section.

Our "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Sender v. City of St. Louis*, 681 S.W.3d 189, 191 (Mo. banc 2024) (quoting *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 122 (Mo. banc 2023)). The term "consent" is not defined in Chapter 475. A term not defined by statute is afforded its plain and ordinary meaning as derived from the dictionary. *Union Elec. Co. v. Mo. Pub. Serv. Comm'n*, 591 S.W.3d 478, 485 (Mo. App. W.D. 2019). When used as a verb, "consent" means "to give assent or approval." *Consent*, Merriam-Webster Online Dictionary, (last visited June 5, 2024).

The plain language of § 475.602.1 contemplates that certain parental rights and responsibilities, namely "powers regarding the care and custody of the child," may be delegated via a power of attorney, but other parental rights and responsibilities, specifically the "power to consent to . . . termination of parental rights," may not be so delegated. But the fact that attorneys-in-fact may not assent to or approve termination of parental rights does not mean that attorneys-in-fact are prohibited from petitioning a court for termination. Rather, § 475.602 simply limits the rights that may be transferred via a

5

power of attorney.  Section 475.602 does not limit the right of the attorney-in-fact to petition for termination or adoption.[6]

To interpret § 475.602.1 otherwise would conflict with other Missouri statutes. Section 211.447.6 states, in relevant part,

> The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or the division, *or in adoption cases, by a prospective parent*, if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination.

(Emphasis added).  And § 453.010.1 provides, in pertinent part, "*Any person desiring to adopt another person as his or her child* shall petition the juvenile division of the circuit court of the county in which [certain venue requirements are met]."  (Emphasis added). Without some indication from the legislature that it intended to exclude attorneys-in-fact acting under § 475.602.1 from the ranks of those who may petition for termination of parental rights and adoption, we decline to interpret § 475.602.1 to impose such a limitation.  Thus, Attorneys-in-Fact are not barred from petitioning for termination of Mother's parental rights simply because they were granted physical custody of Child via power of attorney under § 475.602.1.

As a corollary to her main argument, Mother asserts that Attorneys-in-Fact impermissibly claimed authority to seek termination under the power of attorney.  But the

---

[6] Here, Father consented to termination of his parental rights to Child, and the court terminated his rights accordingly without the need for admission of further evidence.  In contrast, a court will not terminate parental rights simply because attorneys-in-facts consent to termination.  Instead, attorneys-in-fact must petition the court for termination and provide parents the opportunity to object, which Mother did.

6

amended petition did not identify the power of attorney as the basis for their right to seek termination. In their amended petition, Attorneys-in-Fact merely stated that Grandparents, as Child's guardians, had transferred physical custody of her to Attorneys-in-Fact and had executed a power of attorney naming them as attorneys-in-fact. Grandmother testified that this was done so Attorneys-in-Fact could care for Child and because Grandparents were leaving the country. Mother presented no evidence that the power of attorney even attempted to grant Attorneys-in-Fact authority to consent to termination.[7] And the trial court specifically found that the power of attorney did not transfer legal custody of Child to Attorneys-in-Fact.

As the trial court recognized, to the extent Attorneys-in-Fact claim any authority to seek termination of Mother's parental rights and adopt Child, they do so by recognizing their statutory rights as prospective parents under §§ 211.447.6 and 453.010.1. And, to bar Attorneys-in-Fact in this scenario from seeking termination and adoption would contravene § 453.005, which calls for liberal construction of the chapter's adoption provisions to promote the welfare and best interests of the child.

---

[7] The power of attorney is not part of the legal file in this case. To the extent Mother argues that the power of attorney delegated authority beyond that permitted by §475.602, that issue is not properly before us. "The record on appeal shall contain all of the . . . evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." *Sender v. City of St. Louis*, 681 S.W.3d 189, 193-94 (Mo. banc 2024) (quoting Rule 81.12(a)). "When the record does not contain all information and documents essential for the [c]ourt to decide an issue on appeal, the claim of error cannot be reviewed." *Id*. at 194.

## Conclusion

The trial court did not err in denying Mother's motion to dismiss the termination proceedings. The court's judgment terminating Mother's parental rights is affirmed.

_____
Karen King Mitchell, Judge

Thomas N. Chapman, Presiding Judge, and W. Douglas Thomson, Judge, concur.